UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEFFERY FARSHAD** | * | CIVIL NO. 21-0934 |
| **v.** | * | SECTION: T(2) |
| | * | |
| **PROGRESSIVE PALOVERDE** | | |
| **INSURANCE COMPANY** | * | |

## ORDER

Before the Court is Defendant Progressive Paloverde Insurance Company's ("Progressive") *Daubert Motion, or Alternatively, Motion in Limine to Exclude Opinions Regarding Plaintiff's Future Medical Care*.[1] The Plaintiff Jeffrey Farshad filed a response.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

Jeffrey Farshad was "rear-ended" in a car accident on October 31, 2018.[3] Due to the accident, Mr. Farshad allegedly "sustained injuries" ranging from "neck, back, [and] leg pain" to "cervical and lumbar injuries."[4] The other driver's liability coverage was insufficient to cover Mr. Farshad's damages, so he filed a claim under the "uninsured/underinsured motorist" policy with his insurer, Progressive Paloverde Insurance Company ("Progressive").[5] After a dispute over damages, Mr. Farshad sued Progressive in Civil District Court for the Parish of Orleans.

---

[1] R. Doc. 34.
[2] R. Doc. 43.
[3] R. Doc. 1-1 at 1-3; R. Doc. 34-1 at 1-2.
[4] R. Doc. 34-1 at 1-3.
[5] R. Doc. 1-1. at 1-3.

Progressive subsequently removed the case to this Court.[6] Now, the parties are at odds on several evidentiary matters.

In the present motion *in limine*, Progressive asks this Court to exclude the opinions of Plaintiff's expert witnesses Dr. Tod Aust, Dr. Aaron Wolfson, and Dr. Shael Wolfson as "untimely [and] inadmissible."[7] Progressive advances three arguments in support of its motion. First, Progressive argues that Dr. Aust, a pain management physician, fails to pass the *Daubert* standard because he has "changed his recommend[ed]" treatment plans multiple times.[8] As a result, Progressive contends, his opinions are "inherently unreliable" as they must be based on a "whim," are "motivated by litigation," and inherently indicate a failure to consider all "treatment options."[9] Additionally, Dr. Aust's opinions on future medical treatment are "speculative" and would confuse the jury.[10] Second, Progressive asserts that, because both Dr. Aaron Wolfson and Dr. Shael Wolfson relied on Dr. Aust's changing recommendations, their expert reports are outdated and unreliable.[11] Third, any changes to Dr. A. Wolfson and Dr. S. Wolfson's reports were untimely as they were done outside of the scheduling order without good cause.

Mr. Farshad filed a response advancing two arguments.[12] First, Mr. Farshad argues the modifications to Dr. Aaron Wolfson and Dr. Shael Wolfson's reports were timely under this Court's scheduling order.[13] Further, the information that led to the changed reports, Dr. Aust's

---

[6] *See id*.
[7] R. Doc. 34-1 at 1.
[8] *Id.* at 3.
[9] *Id.* at 3-4, 17.
[10] *Id.* at 14, 18-19.
[11] *See id.*
[12] R. Doc. 43.
[13] *Id.* at 9.

modified treatment plans, was unknown prior to the additions and therefore the supplements were appropriate.[14] Second, Mr. Farshad asserts Dr. Aust's opinions are reliable because they are "based upon data taken from a variety of sources," including his own medical knowledge, the opinions of other physicians, and his personal treatment of Mr. Farshad.[15] Mr. Farshad asserts Progressive's disagreements with Dr. Aust's plan "is not a basis for discrediting" Dr. Aust under *Daubert* because that is the nature of "rendering ongoing [medical] treatment."[16]

## LAW & ANALYSIS

Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill experience, training, or education, may testify in the form of opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."[17] When expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony.[18]

In *Daubert*, the Supreme Court established a two-part test for judges to perform in determining the admissibility of expert testimony.[19] First, the court must determine whether the

---

[14] *Id.* at 9-10.
[15] *Id.* at 10.
[16] *Id.* at 12.
[17] Fed. R. Evid. 702*; see Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).
[18] *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[19] *Daubert*, 509 U.S. at 588; *Hitt*, 473 F.3d at 148.

expert's testimony reflects scientific knowledge, is derived by the scientific method, and is supported by appropriate validation.[20] Therefore, the court must examine the expert's methodology. Second, the court must determine whether the testimony will assist the trier of fact in understanding the evidence.[21] "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[22] However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."[23] "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[24] Further, "[v]igorous crossexamination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of questioning an expert's testimony.[25]

The question before the Court is whether the opinions of Dr. Aust, Dr. A. Wolfson, and Dr. S. Wolfson are relevant and reliable under the standards set forth by Federal Rule of Civil Procedure 702 and *Daubert*. The Court finds, at this time, the arguments made by Progressive unpersuasive for three reasons. First, the Court finds good cause to allow Dr. A. Wolfson and Dr. S. Wolfson's supplemental reports. Mr. Farshad's explanation, namely the lack of such information prior to the changed reports, is sufficient and the modifications are vital to a proper adjudication of this case.[26] Additionally, there is minimal prejudice to Progressive's defense in

---

[20] *Daubert*, 509 U.S. at 590.
[21] *Daubert*, 509 U.S. at 591.
[22] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).
[23] *Huss*, 571 F.3d at 452.
[24] *Huss*, 571 F.3d at 452.
[25] *See Daubert,* 509 U.S. at 596.
[26] There are four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4): "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification];

allowing the modifications as Progressive was on notice that intensive treatments may be necessary, as evidenced by prior deposition testimony, and the modified expert reports endorse a *less expensive* life care plan.[27]

Second, Dr. Aust's opinions do not currently appear to be plainly unreliable or violate *Daubert*. Progressive has not put forth any allegations that Dr. Aust's testimony or factual assumptions are unacceptable in his field. Dr. Aust seemingly applied a sound methodology for a physician: using the medical expertise of himself and other medical professionals to examine a patient's history and recommend a treatment plan. Dr. Aust modified that recommendation when circumstances ostensibly changed. Progressive is questioning Dr. Aust's motivations, namely the "bases and sources" of his opinions, but questions of credibility "should be left for the jury's consideration."[28] Accordingly, it does not appear that Dr. Aust's changing recommendations invoke *Daubert*, but instead whether he is believable before a jury. Progressive may question the changing or speculative nature of Dr. Aust's recommendations, and their effects on other expert reports, at trial.

Third, finding Dr. Aust's opinions are not outright unreliable, the Court will not exclude the testimony of Dr. A. Wolfson and Dr. S. Wolfson. Their reliance on the recommendations of a treating physician does not appear to violate *Daubert* or Rule 703 as, presumably, such experts

---

(3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Companies*, L.L.C., 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir.2010)).

[27] Dr. A. Wolfson and Dr. S. Wolfson's first reports indicated costs in the range of roughly $1,000,000.00 to $1,500,000.00 and $1,100,000.00 and $1,770,000.00 respectively. (R. Doc. 34-1 at 5-6). The supplemental reports submitted reduced ranges of $520,000.00 to $740,000.00 and $561,000.00 and $789,000.00. *Id*. at 11-12.

[28] *Scordill v. Louisville Ladder Group, LLC*, 2003 WL 22427981 at *3 (E.D. La. 10/24/03).

reasonably rely on such data regularly. However, Progressive may re-raise its concerns regarding Dr. Aust, Dr. A. Wolfson, and Dr. S. Wolfson's testimony in the courtroom and at the appropriate time. Accordingly, the motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana this 22nd day of February, 2022.

_____
Hon. Greg Gerard Guidry
United States District Judge